UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-61578-BLOOM/Valle

LATITE ROOFING AND SHEET METAL, LLC,
*formerly known as* LATITE ROOFING & SHEET
METAL COMPANY, INC.,

 Plaintiff,

v.

AMERICAN HOME ASSURANCE COMPANY,

 Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Latite Roofing and Sheet Metal, LLC's ("Plaintiff" or "Latite") Motion for Partial Summary Judgment. ECF No. [31] ("Motion"). Pursuant to Local Rule 56.1, Plaintiff filed a Statement of Material Facts in support of the Motion. ECF No. [32] ("SOMF"). Defendant American Home Assurance Company ("Defendant" or "AHAC") filed a Response in Opposition to the Motion, ECF No. [38], along with a Response to Plaintiff's Statement of Material Facts, ECF No. [39] ("CSOMF"). Plaintiff filed its Reply, ECF No. [45], along with a Reply Statement of Material Facts, ECF No. [46], and a copy of the insurance policy at issue in *Intervest Construction of Jax Inc. v. General Fidelity Insurance Co.*, No. 09-cv-00894, 2010 WL 11508050 (M.D. Fla.), ECF No. [47-1]. The Court has reviewed the Motion, the Response, the Reply, the Statements of Material Facts, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

 **I. BACKGROUND**

 This action stems from an alleged breach by Defendant of a commercial general liability insurance policy, number GL 179-62-54 ("Policy"), issued to Plaintiff. In its Amended Complaint,

ECF No. [5], Plaintiff alleges that it is a full-service roofing company with its principal place of business in Pompano Beach, Florida, *id.* ¶ 5, and Defendant is a corporation that sold insurance policies in Florida. *Id.* ¶ 8. Plaintiff purchased the Policy from Defendant, effective January 1, 2007 to January 1, 2008. ECF No. [5-1]. The Policy was modified by a Self-Insured Retention Endorsement ("SIR Endorsement"), which conditions the application of the Policy's coverage on "an insured['s]" payment of the "Retained Limit" of $150,000.00, which applies "only to damages for 'occurrences' or offenses" covered by the Policy. *See* ECF No. [5] ¶¶ 10, 13; *see also* ECF No. [5-1] 2-3.[1]

On April 2, 2020, Plaintiff and others were sued by Stock Development and Stock Construction in connection with a multi-building roofing project in Fort Myers, Florida, *see Stock Dev., LLC v. Brooks & Freund, LLC*, No. 18-CA-004742 (Fla. Cir. Ct. Lee Cnty.) ("Underlying Action"), and one of the defendants in that action, Brooks & Freund, sued Plaintiff in a third-party claim, seeking $9,000,000.00 in damages. *Id.* ¶ 15. On May 6, 2022, the parties to the Underlying Action settled. *Id.* ¶ 21. Defendant disputed whether Plaintiff had satisfied the SIR Endorsement. *Id.* ¶ 22. For that reason, Plaintiff paid $150,000.00 toward the settlement but reserved the right to recoup the same from Defendant. *Id.* As a result of that dispute and others that arose from the parties' differing interpretations of the Policy, Plaintiff asserts a claim for Breach of Contract (Count I).

On March 20, 2023, Plaintiff filed the instant Motion seeking partial summary judgment on the issue of whether, pursuant to the Florida Supreme Court's decision in *Intervest Construction of Jax, Inv. v. General Fidelity Insurance Company*, 133 So. 3d 494 (Fla. 2014), Plaintiff is entitled to apply third-party payments from other insurers in the Underlying Action toward the SIR

---

[1] The SIR Endorsement sets the "Retained Limit" at $1,520,000.00; however, the Amended Complaint alleges, and Defendant has not disputed, that the "Retained Limit" is $150,000.00. ECF No. [5] ¶ 13 n.2.

Endorsement. ECF No. [31] at 1, 2, 8. Plaintiff seeks a ruling that it satisfied the SIR Endorsement because third-party insurance carriers contributed to the settlement in excess of the Retained Limit. *See* ECF No. [31] at 6; *see also* SOMF ¶ 8 ("Two other insurance companies contributed a combined, confidential sum greater than $150,000 toward the settlement on Latite's behalf."). Defendant responds that the Policy's language requires the Retained Limit be paid by Plaintiff and not by third parties. ECF No. [38] at 1-2.

### A. Background and Material Facts

The following facts are undisputed unless otherwise stated.

#### 1. Policy

The Policy was in effect from January 1, 2007 through January 1, 2008. SOMF ¶ 1; CSOMF ¶ 1. The Policy identifies the Named Insured as LATITE ROOFING & SHEET METAL CO., INC. and specifies Limits of Insurance for certain categories of coverage. ECF No. [5-1] at 4, 6, 8. Under the section titled Commercial General Liability Coverage Form, the Policy defines "we," "us" and "our" as the company providing insurance and defines "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." *Id.* at 26. The Policy states that Defendant "will pay for those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* Relevant here, "property damage" means "[p]hysical injury to tangible property . . . or [l]oss of use of tangible property that is not physically injured[,]" *id.* at 38. The Policy states that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period[.]" *Id.* at 26.

#### 2. SIR Endorsement

The SIR Endorsement modifies the Policy, ECF No. [5-1] at 86, and states the following:

3

> **I. INSURING AGREEMENTS**
> SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. - INSURING AGREEMENT, paragraph a. is deleted in its entirety and replaced with the following:
> a. We will pay on behalf of the Insured those sums in excess of the "Retained Limit" that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .
> But:
>
> (1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; . . . .

ECF No. [5-1] at 86 (emphasis added). Per the Policy, "suit" "means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged[,]" and "occurrence" means "an accident[.]" *Id.* at 38.

**Section III, LIMITS OF INSURANCE**, amends the Limits of Insurance and defines the Retained Limit as follows:

> SECTION III - Limits of Insurance is amended to add the following:
> The Limits of Insurance for each of the Coverages provided by this policy will apply in excess of a Self-Insured Retention (hereinafter referred to as the "Retained Limit").
> A. "Retained Limit"
> The "Retained Limit", applying only to damages for "occurrences" or offenses covered under this policy, is $ [150,000.00] per "occurrence" or offense.
> Subject to the additional Allocated Loss Adjustment Expense, the "Retained Limit" is the most an insured will pay for:
> 1. The sum of all damages under Coverage 8 because of all "personal and advertising injury" sustained by any one person or organization; or
> 2. The sum of all damages under coverage A and medical expenses under Coverage C, because of all "bodily injury" and "property damage" arising out of any one "occurrence". . . .

*Id.* at 87-88.

The Policy defines "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured." *Id.* at 26.

Section IV of the SIR Endorsement states the following:

4

> Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the "Retained Limit" will not increase our obligations under the policy. In the event there is insurance, whether or not applicable to an "occurrence", claim or "suit" within the "Retained Limit", you will continue to be responsible for the full amount of the "Retained Limit" before the Limits of Insurance under this policy apply. In no case will we be required to pay the "Retained Limit" or any portion thereof. Our obligations will attach only when the entire amount of the "Retained Limit" has been paid and then only in excess of the "Retained Limit" and not in excess of the Limits of Insurance adjusted for any reduction in the aggregate limit of our liability.

*Id.* at 88 ("Bankruptcy Provision").

Section VI of the SIR Endorsement states the following:

> **VI. SPECIAL CONDITIONS**
> **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit** is amended to add the following:
> . . .
> c. There will be no reduction of the "Retained Limit" because of payment of claims or "suits" arising from claims or "suits" for which coverage is not afforded by the policy.

## II.    LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by a court. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993). A district court may enter an order on summary judgment on the court's interpretation of an insurance contract. *See Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60601-CIV, 2012 WL 12840822, at *1 (S.D. Fla. Apr. 30, 2012) (quoting *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.,* 2011 WL 5877505, at *4 (M.D. Fla. Nov. 23, 2011)) ("Summary judgment is particularly suited to cases of insurance coverage"). Such an order would be appropriate under Rule 56 because it would narrow the issues that remain to be litigated. *See, e.g.*, *Sunflower Condo. Ass'n, Inc. v. Everest Nat'l Ins. Co.*, No. 19-CIV-80743-RAR, 2020 WL

5

5757085, at *5 (S.D. Fla. Sept. 28, 2020) (ruling on a particular theory of breach of an insurance contract on summary judgment); *see also* Fed. R. Civ. P. 56, Comm. Notes on Rules—2010 Amend. ("summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.").

**III. DISCUSSION**

Plaintiff asserts that, under *Intervest*, insurance policyholders may apply third-party indemnification payments toward satisfying a self-insured retention endorsement. ECF No. [31] at 4. To the extent there is ambiguity on whether the Policy requires the insured to pay a self-insured retention endorsement directly out of pocket, Plaintiff reasons that the ambiguity must be construed in the insured's favor. *Id.* at 6, 7. Plaintiff contends that because Defendant failed to draft the SIR Endorsement to include an express and unambiguous condition requiring Plaintiff to pay the Retention Limit, Plaintiff is entitled to reimbursement by Defendant of the $150,000.00 it paid Stock Development and Stock Construction to settle the Underlying Action. *Id.*

Defendant responds with two arguments. First, Defendant contends the Policy precludes Plaintiff from crediting third-party indemnity payments toward the Retention Limit, ECF No. [38] at 4-7, and the Policy is more akin to the one in *Insurance Company of the State of Pennsylvania v. Acceptance Insurance Co.*, No. SACV01-0225DOCANX, 2002 WL 32515066, at *1 (C.D. Cal. Apr. 29, 2002) ("*Acceptance Insurance*") than the one in *Intervest*.[2] *Id.* Defendant contends that the SIR Endorsement precludes third-party payments toward the Retention Limit because a key provision in the SIR Endorsement in *Acceptance Insurance* is substantially identical to the Bankruptcy Provision in the Policy. *Id.* Defendant asserts that other language in the Policy supports its argument, particularly the Policy's definition of "you," and relies on the dissent in *Intervest* to

---

[2] *Acceptance Insurance* was analyzed in *Intervest,* which held that a provision in a self-insured endorsement precluded the insured from applying a third-party payment to satisfy that endorsement.

suggest that sophisticated parties must be bound by the plain meaning of the Policy that "you will continue to be liable for the full amount of the 'Retained Limit'[.]" *Id.* at 8 (citing ECF No. [5-1] at 88).

Second, Defendant asserts that the two other insurance carriers made payments for the settlement in the Underlying Action pursuant to policies issued to Plaintiff with policy periods outside the Policy's period. *Id.* at 8-9. Thus, Defendant claims that "those other policies covered claims that are not covered by the Policy, and therefore the settlement payments made under those other policies do not reduce the Policy's SIR." *Id.* at 9.

Plaintiff replies that this action is indistinguishable from *Intervest* because the insurance policy in *Intervest* contained a provision that is similar to the Bankruptcy Provision. ECF No. [45] at 3-4. Plaintiff contends that *Acceptance Insurance* is neither binding on nor persuasive to this Court. *Id.* at 4-5. Plaintiff asserts the parties' sophistication is irrelevant to the interpretation of the Policy under Eleventh Circuit precedent and Florida law. *Id.* at 5-6. Finally, Plaintiff argues that (1) Defendant forfeited the defense that the third-party payments occurred outside the Policy period because Defendant failed to raise it before contributing to the settlement in the Underlying Action; and (2) the Policy does not unambiguously limit third-party contributions that may be credited toward the Retention Limit to those made during the Policy period. *Id.* at 6-7.

In *Intervest*, a contractor and subcontractor agreed to provide, among other things, the installation of attic stairs in a residence. *Intervest*, 662 F.3d at 1328-29. The contract contained a provision requiring the subcontractor to indemnify the contractor for any damages due to the subcontractor's negligence. *Id.* Seven years later, the owner of the residence fell while using the attic stairs, resulting in serious injuries. *Id.* at 1329. The owner filed suit against the contractor, and the latter sought indemnification under the terms of its contract with the subcontractor, who

maintained a commercial general liability insurance policy with insurer, North Pointe. *Id.* At the time of the accident, the contractor held its own commercial general liability insurance policy issued by General Fidelity, which contained a self-insured retention endorsement of $1,000,000.00. *Id.* The owner, contractor, subcontractor, North Pointe, and General Fidelity settled for $1,600,000.00. North Pointe agreed to pay the contractor $1,000,000.00 to settle the contractor's indemnification claim with the subcontractor. *Id.* A dispute thereafter arose as to whether the contractor or General Fidelity was responsible for paying the balance of $600,000.00. *Id.* Each defendant reserved rights and claims against each other; ultimately, the contractor and subcontractor each paid $300,000.00 toward the settlement, and North Point paid $1,000,000.00 into the contractor's counsel's trust account, which was later paid to the owner. *Id.*

The dispute came before the court in the Middle District of Florida on motions for summary judgment. *Intervest*, 133 So. 3d at 499. The district court found that because the SIR endorsement repeatedly stated that the retained limit must be paid "by you [the insured]" and that the limit would only be reduced by payments "made by the insured," the contractor had to pay the owner $600,000.00 out of pocket. *Id.*; *see also Intervest*, 662 F.3d at 1332. In doing so, the district court relied on several California cases as persuasive authority, even though none of those cases involved "the same policy language." *Intervest*, 662 F.3d at 1332. On appeal, The Eleventh Circuit doubted the California cases were persuasive because the differences in the policy language in those cases were potentially significant. *Id.* at 1330. Specifically, the Eleventh Circuit noted that requiring that payment be made from an insured's "own account" (i.e., with the insured's own funds not traceable to another insurer) was not necessarily equivalent to language requiring that the retained limit be paid "by you" (i.e., by an insured using other insurance proceeds). *Id.* The Eleventh Circuit observed that a "strong argument" could be made that the contractor satisfied the self-insured

8

retention provision because the contractor itself "paid" out-of-pocket for the protection of the indemnification provision. *Id.* In light of those concerns, the Eleventh Circuit certified the question to the Florida Supreme Court. *Id.* at 1328.

In *Intervest*, the Florida Supreme Court explained that the interpretation of insurance contracts under Florida law is governed by generally accepted rules of construction. *Intervest*, 133 So. 3d at 497 (citing *U.S. Fire Ins. Co. v. J.S.U.B.*, 979 So. 2d 871, 877 (Fla. 2007)). In particular, the court explained that ambiguities in an insurance contract are construed against the drafter and in favor of insurance coverage but stated that courts cannot rewrite contracts and must construe insurance policies as a whole, "endeavoring to give every provision its full meaning and effect." *Id.* (citing *J.S.U.B.*, 979 So. 2d at 877).

The court then analyzed the California cases. First considering *Vons Cos. v. United States Fire Insurance Co.*, 78 Cal. App. 4th 52, 92 Cal. Rptr. 2d 597 (2000), the Florida Supreme Court explained that the appellate court in *Vons* concluded the insurance policy in that case permitted payment of the SIR amount using proceeds from other insurance because "[n]owhere does the SIR expressly state that Vons itself, not other insurers, must pay the SIR amount." *Id.* at 501 (citing *Vons*, 78 Cal. App. 4th at 605).

Next, considering *Travelers Indemnity Co. v. Arena Group 2000, L.P.*, 2007 WL 935611 (S.D. Cal. Mar. 8, 2007), the court pointed out that the *Arena Group* court concluded the policy required the insured, not a third party, to pay the SIR Endorsement because the policy language stated, "Insured shall pay from its own account all amounts within the Retained Amount" and "the Retained Amount is the responsibility of the Insured and is to be paid from the Insured's own account." *Id.* (citing *Arena Group*, 2007 WL 935611, at *5).

9

Turning to *Forecast Homes, Inc. v. Steadfast Insurance Co.*, 181 Cal. App. 4th 1466, 105 Cal. Rptr. 3d 200 (2010), the court explained that the relevant policy language was clear and unambiguous because the SIR endorsement required the named insured itself to "make actual payment" of the SIR amount and provided that "[p]ayments by others, including but not limited to additional insured or insurers, do not serve to satisfy the self-insured retention." *Id.* (quoting *Forecast Homes*, 105 Cal. Rptr. 3d at 208).

Finally, the Florida Supreme Court considered *Acceptance Insurance*, a case in which the *Acceptance Insurance* court concluded the SIR endorsement "clearly and unambiguously" required the insured to satisfy the SIR using its own funds, regardless of other applicable insurance coverage. *Id.* at 502 (quoting *Acceptance Insurance*, 2002 WL 32515066, at *7). The crucial provision in *Acceptance Insurance* states, "In the event that there is any other insurance, whether or not collectible, applicable to an occurrence, claim or suit within the Self-Insured Retention, you will continue to be responsible for the full Self-Insured Retention before the limits of insurance under this policy apply." *Acceptance Ins.*, 2002 WL 32515066, at *2. On that provision, the Florida Supreme Court explained:

> The SIR contained a provision stating that regardless of other insurance, the insured would continue to be responsible for the full SIR before the limits of insurance under the NACIC policy would apply. The [*Acceptance Insurance*] court noted that this provision in the SIR endorsement would be meaningless if not interpreted as requiring the insured to satisfy the SIR with its own funds. *Id.* Otherwise, the provision "would be reduced to simply reiterating the more general terms" of the policy. Additionally, the endorsement expressly stated that it changed the policy and that it controlled in the event of a conflict with other policy provisions. The court explained that the SIR endorsement in the . . . policy "clearly place[d] the insured on notice that the additional provisions of the Endorsement change[d] the general policy terms and conditions and [were] separate requirements."

*Intervest*, 133 So. 2d at 502 (internal citations omitted).

The Florida Supreme Court agreed with the Eleventh Circuit that the policy in *Intervest* materially differed from those in *Arena Group*, *Forecast Homes*, and *Acceptance Insurance* in that

there was no provision "addressing other insurance within the context of the SIR." *Id.* The court went on to explain that, unlike the *Intervest* policy, the policy in *Acceptance Insurance* "contained a provision expressly stating that regardless of other insurance the insured would continue to be responsible for the full SIR before the limits of the policy applied." *Id.* at 502. Absent such a provision, the court agreed with the Eleventh Circuit that requiring payment to be made "by you" was ambiguous. Thus, the court determined the policy in *Intervest* was, like the one in *Vons*, where the SIR endorsement did not "expressly state that Vons itself . . . must pay the SIR amount." *Id.* Absent an "express policy provision to the contrary," the court determined the contractor should gain the benefit of its bargain from paying for a right to indemnification from another insurer. *Id.*

Accordingly, the court construed the ambiguous language of the SIR endorsement— "by you" and "by the insured"—against General Fidelity and in favor of coverage to hold that "the insured in this case can use the payment to it from a third party to satisfy the self-insured retention provision." *Id.* at 495.[3] Thus, *Intervest* stands for the proposition that ambiguities in an insurance contract relating to who should satisfy a self-insured retention should be construed in favor of the insured, unless there is an express provision to the contrary. Where such a provision exists, it must be given effect.

As such, the question here is whether there is an express provision that requires Plaintiff to itself pay the Retained Limit. As the following demonstrates, the language of the Bankruptcy Provision, in context, expressly requires Latite to pay the Retained Limit itself. The self-insured retention endorsement in *Intervest* stated:

> The insolvency, bankruptcy, receivership of the insured, or any refusal by or inability of the insured to satisfy its obligations pursuant to this endorsement will not reduce the "Retained Limit" as set forth in the endorsement, nor will it require us to pay any amounts within the "Retained Limit." The payment of the "Retained

---

[3] In light of the Florida Supreme Court's answers, the Eleventh Circuit reversed the district court. *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 746 F.3d 1261, 1263 (11th Cir. 2014).

> limits" by the insured is a condition precedent for our obligation to pay any sums either in defense or indemnity and we shall not pay any such sums until and unless the insured has satisfied its "Retained limits."

*Intervest*, 133 So. 3d at 499. By contrast, the Bankruptcy Provision in the SIR Endorsement states:

> Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the "Retained Limit" will not increase our obligations under the policy. ***In the event there is insurance, whether or not applicable to an "occurrence", claim or "suit" within the "Retained Limit", you will continue to be responsible for the full amount of the "Retained Limit" before the Limits of Insurance under this policy apply.*** In no case will we be required to pay the "Retained Limit" or any portion thereof. Our obligations will attach only when the entire amount of the "Retained Limit" has been paid and then only in excess of the "Retained Limit" and not in excess of the Limits of Insurance adjusted for any reduction in the aggregate limit of our liability.

ECF No. [5-1] at 88 (emphasis added). Absent from the policy in *Intervest*, and present in the Policy here, is the requirement that "you will continue to be responsible for the full amount of the 'Retained Limit'" "[i]n the event there is insurance." That language is substantially identical to the language in *Acceptance Insurance*, which *Intervest* explained was a condition that expressly required the insured itself to pay the SIR endorsement, regardless of other insurance.

> The relevant language in *Acceptance Insurance* states:
>
> In the event that there is any other insurance, whether or not collectible, applicable to an occurrence, claim or suit within the Self-Insured Retention, you will continue to be responsible for the full Self-Insured Retention before the limits of insurance under this policy apply.

*Acceptance Ins.*, 2002 WL 32515066, at *5.

As such, *Acceptance Insurance*—a case on which *Intervest* relied—is on point. *Intervest* requires that this Court find as a matter of law that the language in the Bankruptcy Provision requires Plaintiff to pay the Retained Limit with its own funds, not those of other insurers.

This conclusion is further bolstered by *Vons*. As *Acceptance Insurance* explained, the *Vons* court stated that the following language requires the insured to fund a self-insured retention on its own:

12

> In the event that there is any other insurance, whether or not collectible, applicable to an occurrence, claim or suit within the Self-Insured Retention, *you will continue to be responsible for the full Self-Insured Retention before the limits of insurance under this policy apply.*

*See Vons*, 92 Cal Rptr. 2d at 605 n.4 (emphasis in original); *see also Acceptance Insurance*, 2002 WL 32515066, at *5 (quoting *Vons*, 92 Cal Rptr. 2d at 605 n.4). That language is also substantially similar to that in the Bankruptcy Provision.

Moreover, under generally accepted rules of insurance contract construction, as set forth in *Intervest*, the Bankruptcy Provision unambiguously requires Plaintiff, not third parties, to satisfy the SIR Endorsement. That is because such a reading gives both the Retained Limit requirement in Section III of the SIR Endorsement and the Bankruptcy Provision in Section IV independent—as opposed to duplicative—meaning. In contrast, a reading of the Bankruptcy Provision in which, regardless of other insurance coverage, Plaintiff must ensure only that the Retained Limit is paid by someone other than Defendant would limit that provision merely to reiterating the Retained Limit requirement, rendering the former requirement superfluous. *See Intervest*, 133 So. 3d at 502 ("Otherwise, the provision 'would be reduced to simply reiterating the more general terms' of the policy." (quoting *Acceptance Ins. Co.*, 2002 WL 325215066 at *7)).

Because the Bankruptcy Provision expressly states that Plaintiff must pay the Retained Limit, the Court finds the language of the SIR Endorsement precludes crediting payments by other insurance carriers toward the Retained Limit. Finding so, the Court finds it unnecessary to consider Defendant's alternative argument that Section VI of the SIR Endorsement precludes payments toward the Retained Limit outside the Policy period.

## IV. CONCLUSION

Accordingly, it is ordered and adjudged that Plaintiff's Motion for Partial Summary Judgment, **ECF No. [31]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 12, 2023.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:  Counsel of Record